IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOM PATRICK BIRNER** : <br> 1541 33RD ST., NW : <br> WASHINGTON, DC 20007 : <br> *Plaintiff* : Case No: <br> : <br> v. : <br> : <br> **JOHN M. BURKMAN, JR.** : <br> 1599 N. Colonial Ter. : <br> ARLINGTON, VA 22209 : <br> : <br> and : <br> : <br> **JACOB WOHL** : <br> 1599 N. Colonial Ter. : <br> ARLINGTON, VA 22209 : <br> *Defendants* : | |

## COMPLAINT

1. Plaintiff Tom Patrick Birner ("Plaintiff") by and through the undersigned counsel, hereby brings the following action for damages and equitable relief against the Defendants John M. Burkman, Jr., a.k.a. Jack Burkman ("Defendant Burkman") and Jacob Wohl ("Defendant Wohl").

## PARTIES

2. Plaintiff is an adult individual residing in the District of Columbia.

3. Defendant Burkman is an adult individual believed to be residing in the Commonwealth of Virginia and works as a federal lobbyist with the firm J.M. Burkman and Associates.

4. Defendant Wohl is an adult individual believed to be residing in the Commonwealth of Virginia and works as a federal lobbyist with the firm J.M. Burkman and Associates.

1

## JURISDICTION AND VENUE

5. This court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy is more than $75,000.

6. As alleged herein, the Defendants are registered lobbyists and work on a regular basis in the District of Columbia and the Plaintiff is a resident of the District of Columbia. As such, venue properly lies with this Court under 28 U.S.C. § 1391(b)(3).

## FACTS

7. In May 2022, the Plaintiff met a girl on Tinder who claimed her name was "Emily" and she was 19 years old.

8. "Emily" and the Plaintiff exchanged phone numbers and texted each other occasionally.

9. "Emily" told the Plaintiff that she wanted to meet him in Maryland, and that she was actually 16 years old, not 19 years old.

10. The Plaintiff believed "Emily" was well over the age of 16 years old, because she looked and acted over the age of 16.

11. In early June 2022, "Emily" pushed the Plaintiff to meet her at what she claimed was her parent's home in Edgewater, Maryland. The Plaintiff was hesitant to go, but "Emily" insisted that he make the trip from the District of Columbia to Edgewater, Maryland.

12. Upon arriving at the house "Emily" directed him to in Edgewater, Maryland, the Plaintiff was let into the house by "Emily."

13. Once inside the house, "Emily" told the Plaintiff to take his clothes off and to sit on the couch in the home and to masturbate while she watched.

14. After a moment or two, "Emily" excused herself and went upstairs.

15. After "Emily" left the room, Defendants Burkman and Wohl entered the room where Plaintiff was seated along with a camera crew who began filming the Plaintiff while he was naked without warning and without his permission.

16. Plaintiff believes the woman going by the name "Emily" is really named Storm Moya Bodernik, whose birthday is March 3, 1999. Storm Moya Bodernik is the person who spoke to the police when they came to the home after being called by the Defendants.

16. As the Plaintiff was sitting on the couch, naked, the Defendants began interrogating the Plaintiff about why he was at the house and why he was naked with an underage girl.

17. The Defendants brought their employees, who were men dressed in security attire into the room where the Plaintiff was seated to intimidate him.

18. The Defendants interrogated the Plaintiff for approximately an hour.

19. The Defendants continued to accuse the Plaintiff of contacting an underage female in front of several of their employees, even though they knew this statement was not true.

20. The Defendants accused the Plaintiff of trolling for teens online, in front of their employees.

21. While the Defendants interrogated the Plaintiff, an employee of the Defendants searched a backpack the Plaintiff brought with him without the Plaintiff's permission.

22. The Defendants' film crew continued to film the Plaintiff without his permission as the Defendants continued to interrogate and harass the Plaintiff.

23. The Defendants asked the Plaintiff evasive questions about his sexual history and they accused him of being a pedophile.

24. The Plaintiff felt threatened and intimidated and felt that he was not allowed to leave because the Defendants' employee had his backpack and personal property.

25. The Defendants' employee found two Adderall pills in the Plaintiff's backpack.

26. The Defendants, or their employees, called the police and claimed they had a person with illegal drugs and a suspicion of being a child abuser or pedophile.

27. The police arrived at the Edgewater Maryland home and arrested the Plaintiff and seized his backpack, which contained a laptop computer and his phone.

28. The Plaintiff was charged with possession of a controlled substance. He pled no contest to a misdemeanor drug charge and was given community service.

29. The Defendants did not own the home where the incident took place.

30. The Defendants uploaded edited videos and photos of the Plaintiff and the interaction that took place in the home on YouTube, Facebook under their video show "Predator DC."

31. The Defendants also entrapped other men in the same way they did the Plaintiff for the purpose of content for their web show.

32. The scenario the Defendants constructed was entirely false and set up for the purpose of entrapping and humiliating the Plaintiff for their own benefit and for the publicity of their web show Predator D.C.

33. The actions described herein took place in Edgewater, Maryland. Under Maryland law, it is not a crime for an adult to have consensual sexual relations with a female who is 16 years of

age or older. *See* Md. Ann. [Crim.] Code §§ 3-301, 3-304 (2018); Md. Ann. [Crim.] Code §§ 3-301, 3-307 (2018); and Md. Ann. [Crim.] Code §§ 3-301, 3-308 (2018).

34. The Defendants made several defamatory statements about the Plaintiff in the videos and in a Substack article about the incident written by Defendant Wohl.

35. The Defendants control several media postings that contain defamatory images and statements regarding the Plaintiff including:

https://www.youtube.com/watch?v=5-qgelbl_sk
https://www.youtube.com/watch?v=5-qgelbl_sk&t=51s
https://www.facebook.com/predatordc/posts/161737069698005/
https://jacobawohl.substack.com/p/teacher-at-hyde-addison-elementary
https://www.imdb.com/title/tt17220738/?ref_=nm_knf_i_2

36. The Plaintiff requested that the Defendants remove the references to him contained in the media references they posted, but as of the filing of this complaint, the Defendants have ignored the Plaintiff's request.

37. The Defendants purposely contacted the Plaintiff's employer and the Plaintiff's girlfriend and disclosed false allegations against the Plaintiff.

38. The Plaintiff continues to suffer from anxiety, fear, shame and stress because the Defendants refuse to remove the public defamatory references made about him the Defendants posted in the public domain.

**COUNT 1**
**Defamation**
**(All Defendants)**

39. Paragraphs 1 through 38 are incorporated herein by reference.

40. In a YouTube video, posted on April 6, 2023, the Defendants made numerous defamatory and false statements about the Plaintiff and accused him of coming to the home to have sex with an underage teen. In fact, the person he came to the home to visit said she was 16 years old, but in reality was many years older than 16.

41. The YouTube video, posted on April 6, 2023, starts showing the Plaintiff being arrested. Defendant Burkman then says, "Okay, here's Tom (Plaintiff) coming in right now…"

42. The video the states: "Every parent's worse nightmare." Again, this was a reference to the Plaintiff.

43. The video then cuts to the following statements which refers to the Defendants' intent in their interaction with the Plaintiff:

   1. "We lure them in."
   2. "We catch them in the act."
   3. "We bust them."

44. At no time does the video show the Plaintiff doing anything with "Emily."

45. In front of their employees and on the video that was made public, the Defendants accused the Plaintiff of committing multiple felonies.

46. In front of their employees and on the video that was made public, the Defendants accused the Plaintiff of crossing state lines to have sex with an underage teen.

47. In front of their employees and on the video that was made public, the Defendants gave the Plaintiff the impression that they were law enforcement to entice him to admit to crimes; even though the Defendants are not law enforcement officers.

48. In front of their employees and on the video that was made public, Defendant Burkman accused the Plaintiff of "trolling for teens for sex online."

49. In front of Defendants' employees, and on the video that was made public, a female employee of the Defendants read a number of alleged texts made by the Plaintiff after which Defendant Burkman asked the Plaintiff "how would you like that to be read in open court" again, giving the Plaintiff the impression that the Defendants were law enforcement.

50. In front of their employees and on the video that was made public, Defendant Wohl stated that he heard from a person that the Plaintiff molests teens frequently. This statement was absolutely false.

51. In front of their employees and on the video that was made public, Defendant Wohl accused the Plaintiff of sexual abuse of minor children. This statement was absolutely false.

52. In front of their employees and on the video that was made public, Defendants accused the Plaintiff of having child porn. This accusation was absolutely false. Indeed, after the police returned the Plaintiff's computer and phone, which was seized, there was no evidence that the Plaintiff had child porn on his phone or computer.

53. When the Plaintiff asked the Defendants for their identity, they refused to disclose their identity or the identity of their employees.

54. The Defendants knew that the statements they made in front of their employees and disclosed to the public in their YouTube video were false.

55. At no time did Plaintiff ever communicate with a female associated with the Defendants, who was a minor.

56. Despite the Defendants' false allegations, the Plaintiff is not a predator. He is not a pedophile. He is not a danger to society. He did not intend to prey upon an underage teen.

57. Under Maryland law, it is not a crime for an adult to have consensual sexual relations with a female who is 16 years of age or older. . *See* Md. Ann. [Crim.] Code §§ 3-301, 3-304 (2018); Md. Ann. [Crim.] Code §§ 3-301, 3-307 (2018); and Md. Ann. [Crim.] Code §§ 3-301, 3-308 (2018). The Defendants did not communicate this information when they defamed Plaintiff through the YouTube video at issue because they wanted viewers of the video to think that the Plaintiff was a pedophile, which is not true.

58. The Defendants knew that the statements they made in front of their employees and disclosed to the public in their YouTube video were harmful to the Plaintiff.

59. The statements made to and about the Plaintiff, that the Defendants made in their YouTube video are defamatory *per se* and damages are presumed. The statements published by the Defendants about the Plaintiff are highly damaging to the Plaintiff's reputation, both personally and professionally, and they are so damaging that they would deter third persons from associating or dealing with the Plaintiff.

60. The Defendants acted with intent, purpose and malice when they published the above described false statements about the Plaintiff.

61. As a result of the actions by the Defendants described herein, the Plaintiff suffered severe emotional and mental damage and he suffered monetary damage when he lost his job because the Defendants contacted his employer and made false allegations against him.

WHEREFORE, the Plaintiff seeks damages in the amount of five million dollars ($5,000,000) as compensation for the actions of the Defendants that caused the damages described herein, the

Plaintiff demands that the Defendants remove all media and/or videos on YouTube and other sources regarding the Plaintiff and the Plaintiff seeks attorney fees and costs for bringing this action and other relief as the Court deems fair and just.

.

## COUNT 2
## Defamation
## (Defendant Wohl)

62. Paragraphs 1 through 61 are incorporated herein by reference.

63. On June 6, 2022, Defendant Jacob Wohl posted an article on an internet site called SubStack, describing his interaction with the Plaintiff.

https://jacobawohl.substack.com/p/teacher-at-hyde-addison-elementary

64. Defendant Wohl's article on SubStack is still up and available for the public to see.

65. In the article, Defendant Wohl implies that the Plaintiff was arrested as part of a child sex sting operation. This statement is false.

66. In the article, Defendant Wohl states that there was a "long string of victims," implying that the Plaintiff harmed underaged teens. This statement is false.

67. In the article, Defendant Wohl states that the Plaintiff attempted to have sex with a decoy posing as an underage teen. This statement is false.

68. In the article, Defendant Wohl stated that the Plaintiff claimed he knew the decoy was underage and that he repeated that he knew the decoy was underage to the police. This statement is false.

69. In the article, Defendant Wohl stated that the Plaintiff sent texts to the decoy asking for child pornography. This statement is false.

70. Defendant Wohl knew that the statements he published to the public on SubStack were harmful to the Plaintiff.

71. The statements made to and about the Plaintiff, that Defendant Wohl made in his SubStack article are defamatory *per se* and damages are presumed. The statements published by the Defendant Wohl about the Plaintiff are highly damaging to the Plaintiff's reputation, both personally and professionally, and they are so damaging that they would deter third persons from associating or dealing with the Plaintiff.

72. Defendant Wohl acted with intent, purpose and malice when he published the above-described false statements about the Plaintiff.

73. As a result of the actions by Defendant Wohl described herein, the Plaintiff suffered severe emotional and mental damage and he suffered monetary damage when he lost his job because Defendant Wohl contacted his employer and made false allegations against him.

WHEREFORE, the Plaintiff seeks damages in the amount of five million dollars ($5,000,000) as compensation for the actions of Defendant Wohl, individually, that caused the damages described herein, the Plaintiff demands that the Defendant Wohl remove the SubStack article regarding the Plaintiff and the Plaintiff seeks attorney fees and costs for bringing this action and other relief as the Court deems fair and just.

.

## COUNT 3
## Common Law Conspiracy
## (All Defendants)

74. Paragraphs 1 through 73 are incorporated herein by reference.

75. By engaging in the aforementioned wrongful conduct towards the Plaintiff, the Defendants entered into an agreement, which was illegal under common law, to purposefully, willfully and maliciously injure Plaintiff in his reputation, and in his occupation and profession as an elementary school teacher.

76. Defendants in concert with each other and with their employees acted intentionally, maliciously, and with reckless indifference in conscious disregard for the Plaintiff's rights.

77. The Defendants knew that their combined actions would harm the Plaintiff.

78. As a result of the actions by Defendants described herein, the Plaintiff suffered severe emotional and mental damage and he suffered monetary damage when he lost his job because Defendants conspired to contact his employer and made false allegations against him.

WHEREFORE, the Plaintiff seeks damages in the amount of five million dollars ($5,000,000) as compensation for the actions of Defendants, that caused the damages described herein, and the Plaintiff seeks attorney fees and costs for bringing this action and other relief as the Court deems fair and just.

## COUNT 4
## Tortious Interference with Contract – Business Expectancy
## (All Defendants)

79. Paragraphs 1 through 78 are incorporated herein by reference.

80. On Saturday June 4, 2022, Defendants knew that the Plaintiff worked as an elementary school teacher at Hyde-Addison Elementary School and that he worked with children.

81. Plaintiff was contacted by Defendants, acting as an underage female with the purpose of entrapping him and ruining his reputation for the purpose of their personal gain.

82. Defendants learned through their own research and investigation that the Plaintiff was a teacher at Hyde-Addison Elementary School.

83. The fact that the Plaintiff was an elementary school teacher was the driving force behind the Defendants' actions in entrapping the Plaintiff.

84. Thereafter, the Plaintiff lost his job at Hyde-Addison Elementary School, for no justifiable reason. Upon information and belief, this occurred because the Defendants, either directly or indirectly contacted Hyde-Addison Elementary School and falsely told the administration there false statements about the Plaintiff.

85. Plaintiff's interaction with the Defendants occurred on a Saturday June 4, 2022, and on the following Monday morning, he was fired from his job at Hyde-Addison Elementary School.

86. The Defendants acted in a malicious and unlawful manner with the intent to interfere and damage Plaintiff's employment with Hyde-Addison Elementary School and his ability to otherwise earn a living as an elementary school teacher.

87. The Defendants targeted the Plaintiff solely because he was an elementary school teacher.

88. Defendants undertook this course of unlawful conduct against the Plaintiff with malice towards him, with the purpose of damaging his reputation, as well as his ability to work as an elementary school teacher.

WHEREFORE, the Plaintiff seeks damages in the amount of five million dollars ($5,000,000) as compensation for the actions of Defendants, that caused the damages described herein, and the Plaintiff seeks attorney fees and costs for bringing this action and other relief as the Court deems fair and just.

## COUNT 5
### Intentional Infliction of Emotional Distress
### (All Defendants)

89. Paragraphs 1 through 88 are incorporated herein by reference.

90. The Defendants acted maliciously and with intent to entrap the Plaintiff for the purpose of humiliating him and for their own benefit.

91. The purpose of Defendants' web series, Predator DC, was to entrap men by using a adult female employee to pose as a teen to sexually entice men.

92. The Defendants targeted the Plaintiff to entrap him solely because he was an elementary school teacher.

93. The Defendant's public statements about the Plaintiff were false, defamatory and outrageous.

94. The Defendants knew that the Plaintiff was not a pedophile. The Defendants knew that if their employee claimed to be 16 years old, it would not be illegal in Maryland for the Plaintiff to engage in sexual relations with her. The Defendants knew that their employee was not, in fact, 16 years old.

95. The Defendants know that if they publicized the allegations about the Plaintiff that they did publicize, it would cause harm to the Plaintiff.

96. The Defendants acted purposefully, and/or recklessly and as a result, they caused the Plaintiff to suffer severe emotional distress which adversely affected his mental health.

97. As a result of the Defendants' purposeful and malicious actions, the Plaintiff still suffers from anxiety and stress, he has lost family and friends, he lost prospective employment opportunities, he has problems sleeping and concentrating, he is seeing a therapist to help cope with his anxiety.

98. The purposeful actions of the Defendants, both individually and collectively has caused the Plaintiff to suffer his emotional distress.

WHEREFORE, the Plaintiff seeks damages in the amount of five million dollars ($5,000,000) as compensation for the actions of Defendants, that caused the damages described herein, and the Plaintiff seeks attorney fees and costs for bringing this action and other relief as the Court deems fair and just.

**JURY TRIAL DEMANDED.**

**[VERIFICATION AND SIGNATURE ON FOLLOWING PAGE]**

## VERIFICATION

I, Thomas Patrick Birner, verify that statements made herein are true and correct to the best of my knowledge, information and belief.

/s/ Thomas Patrick Birner_____
Thomas Patrick Birner

Respectfully submitted,

/s/ Laurence L. Socci
Laurence L. Socci Esq.
D.C. Bar No. 241318
The Socci Law Firm
P.O. Box 14051
Washington, DC 20044
(202) 262-5843
laurence.socci@soccilawfirm.com
Counsel for the Plaintiff